IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| PATRICK DAVIS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | NO. 5:12-CV-294 (CAR) |
| VS. | : | |
| | : | |
| WILLIAM POWELL, *et al.*, | : | |
| | : | Proceedings Under 42 U.S.C. § 1983 |
| Defendants. | : | Before the U.S. Magistrate Judge |
| | : | |

# RECOMMENDATION

Before the Court is a Motion to Dismiss filed by Defendant Deputy Warden William Powell. Doc. 22. Because Plaintiff Patrick Davis failed to exhaust his administrative remedies regarding his supervisory liability claim against Defendant Powell before filing his complaint, and because Plaintiff also failed to state a supervisory liability claim against Defendant Powell upon which relief may be granted, it is hereby **RECOMMENDED** that the Motion to Dismiss be **GRANTED**.

## FACTUAL AND PROCEDURAL HISTORY

The above-styled 42 U.S.C. § 1983 action arises out of an alleged incident of excessive force at Georgia Diagnostic and Classification Prison on July 21, 2010.[1] Plaintiff alleges that, while he was restrained with handcuffs and ankle shackles, Defendant Officer Emmanuel Young pinned Plaintiff against the wall and struck Plaintiff on the left side of his face and ear with a closed fist. Plaintiff claims that he experienced pain because of Defendant Young's excessive force and that despite his subsequent requests for medical treatment, Plaintiff was not examined

---

[1] The facts presented herein appear as alleged in Plaintiff's initial complaint or his subsequent supplements. Docs. 1, 8, 9.

by Dr. Burnside until August 10, 2010. At that time, Dr. Burnside informed Plaintiff that he "did not see anything wrong" with Plaintiff's ear.

In addition, Plaintiff alleges that on July 27, 2010, he informed Defendant Powell that he had not yet received medical treatment after the July 21, 2010 incident. During this conversation, Defendant Powell responded, "she told me that she examined you," and Defendant Powell also mentioned there were documents indicating that Plaintiff already had received medical treatment. Plaintiff claims that he told Defendant Powell that he had submitted several medical request forms, some of which predated the July 21, 2010 incident, to no avail. Plaintiff further alleges that one day later, on July 28, 2010, Defendant Powell informed Plaintiff that he had reviewed the recording of the July 21, 2010 incident and told Plaintiff that "Officer Young only placed his hand on your face to turn it to the side" and that "officers are allowed to get in your face because you're an inmate, and you're to be treated like that."

On July 12, 2012, Plaintiff executed his initial complaint against nine named individuals affiliated with Georgia Diagnostic and Classification Prison.[2] Doc. 1. The Court ordered Plaintiff to supplement his initial complaint because Plaintiff failed to provide sufficient detail to allow the Court to evaluate his claims. Doc. 5. Plaintiff subsequently filed two supplemental pleadings. Docs. 8, 9. Following a frivolity review of Plaintiff's complaint under 28 U.S.C. § 1915A, the Court concluded that only Plaintiff's excessive force claim against Defendant Young should proceed past frivolity review. Doc. 10.

Plaintiff filed an objection to the Court's order and recommendation in which he reiterated his prior allegations about Defendant Powell and claimed for the first time that

---

[2] Although the Court received Plaintiff's complaint on July 24, 2012, Plaintiff executed his complaint on July 12, 2012, which is construed as the date of filing where, as here, a *pro se* inmate files his civil rights complaint under 42 U.S.C. § 1983. See generally Lewis v. Barnick, 385 Fed. Appx. 930, 931 (11th Cir. 2010), quoting Garvey v. Vaughn, 993 F.2d 776, 783 (11th Cir. 1993).

Defendant Powell's July 28, 2010 statement to Plaintiff demonstrated that Defendant Powell had instituted a custom of excessive force in violation of Plaintiff's constitutional rights. Doc. 13. After reviewing Plaintiff's objection, the Court permitted Plaintiff to proceed with his supervisory liability claim against Defendant Powell as well as his excessive force claim against Defendant Young. Doc. 17.

Defendant Powell subsequently filed a motion to dismiss. Doc. 22. Plaintiff responded to Defendant Powell's motion to dismiss, and Defendant Powell replied to Plaintiff's response. Docs. 34, 35. To date, Defendant Young has not been served despite the Court's ongoing efforts to effectuate service.[3] Docs. 11, 12, 14, 15, 16, 20, 31.

## DISCUSSION

The Motion to Dismiss (Doc. 22) argues, *inter alia*, that Plaintiff failed to exhaust his administrative remedies and that Plaintiff failed to state a claim upon which relief may be granted. Because Plaintiff did not file a grievance regarding Defendant Powell's alleged institution of a custom of excessive force before he initiated this lawsuit, Plaintiff's supervisory liability claim against Defendant Powell should be dismissed for failure to exhaust administrative remedies. In the alternative, because Plaintiff's claim against Defendant Powell is based solely on Defendant Powell's supervisory position at Georgia Diagnostic and Classification Prison, and because Plaintiff does not allege a sufficient causal connection between Defendant Powell's actions and the alleged constitutional deprivation suffered by Plaintiff, Plaintiff's supervisory liability claim against Defendant Powell should be dismissed for failure to state a claim upon which relief may be granted.

---

[3] The record indicates that Defendant Young resigned from the Georgia Department of Corrections in January 2011 without leaving a forwarding address. Doc. 20. On February 21, 2013, the Court directed Plaintiff to provide additional information about the current mailing address for Defendant Young so that the Court may continue its efforts to effectuate service. Doc. 31. Plaintiff has not yet furnished the Court with any additional information about the current whereabouts of Defendant Young.

A. <u>Failure to Exhaust Administrative Remedies</u>

Pursuant the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] [...], or any other federal law, by a prisoner confined in any [...] prison [...] until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of all available administrative remedies is a mandatory precondition to filing suit, and federal courts cannot waive the exhaustion requirement. <u>Booth v. Churner</u>, 532 U.S. 731, 734 (2001); <u>Alexander v. Hawk</u>, 159 F.3d 1321, 1326 (11th Cir. 1998). The exhaustion requirement requires proper exhaustion in compliance with the administrative process, and claims that are not properly exhausted must be dismissed. <u>Harper v. Jenkin</u>, 179 F.3d 1311, 1312 (11th Cir. 1999).

It is well-established that the exhaustion of available administrative remedies is mandatory, even when the administrative procedures set forth by the prison are futile or inadequate. <u>Alexander</u>, 159 F.3d at 1326. That is, to satisfy the exhaustion requirement, the plaintiff must pursue all available administrative remedies fully. <u>Harper</u>, 179 F.3d at 1312. Because the plaintiff must exhaust his administrative remedies fully before commencing his lawsuit in federal court, any claims that were not exhausted before the plaintiff filed his original complaint must be dismissed even if the plaintiff exhausts his administrative remedies at some future date. <u>Smith v. Terry</u>, 491 Fed. Appx. 81, 83-84 (11th Cir. 2012).

Where a motion to dismiss is based on the affirmative defense of failure to exhaust administrative remedies, review of the motion involves a two-step process. <u>Turner v. Burnside</u>, 541 F.3d 1077, 1082 (11th Cir. 2008). The court first looks to the factual allegations in the motion seeking dismissal as well as those in the plaintiff's response. <u>Id</u>. If they conflict, the court takes the plaintiff's version of the facts as true. <u>Id</u>. "If, in that light, the defendant is entitled to

have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." Id. If the complaint is not subject to dismissal under the plaintiff's version of the facts, the court must proceed to the second step, making specific findings of fact to resolve the disputed factual issues related to exhaustion. Id. At the second stage of the analysis, it is the defendant's burden to prove that the plaintiff failed to exhaust his available administrative remedies. Id.

In this case, Defendant Powell provided the Court with undisputed evidence that Plaintiff failed to exhaust his administrative remedies regarding Defendant Powell's alleged institution of a custom of excessive force before he initiated this lawsuit. Specifically, Defendant Powell attached the affidavit of Gary Caldwell, Chief Grievance Counselor at Georgia Diagnostic and Classification Prison, which is labeled as Exhibit 1. Doc. 22-2. Defendant Powell also attached the Georgia Department of Corrections Standard Operating Procedure ("GDOC SOP"), which is labeled as Exhibit A. Doc. 22-3. The GDOC SOP sets forth the statewide grievance procedure under which inmates must attempt to resolve their grievances internally by following three steps: (1) file an informal grievance to which the prisoner's counselor must respond within 10 days; (2) file a formal grievance to which the warden must respond within 30 days; and (3) file an appeal to which the commissioner's office must respond within 90 days. Id. The GDOC SOP further provides that an inmate must file an informal grievance no later than 10 days from the date the inmate knew or should have known the facts giving rise to the grievance. Id. Additionally, Defendant Powell provided Plaintiff's grievance history, which is labeled as Exhibit B. Doc. 22-4. According to Plaintiff's grievance history, Plaintiff filed three grievances at Georgia Diagnostic and Classification Prison between July 21, 2010 and August 12, 2010. Id.

The undisputed evidence provided by Defendant Powell presents no indication that Plaintiff ever filed any grievance regarding Defendant Powell having instituted a custom of excessive force. Nowhere in any of his three grievances does Plaintiff allege that Defendant Powell instituted a custom of excessive force that resulted in deliberate indifference to Plaintiff's constitutional rights. Doc. 22-2. To the contrary, the record indicates that Plaintiff never mentioned Defendant Powell in any of his three grievances filed between July 21, 2010, and August 12, 2010. Id.

In grievance number 58935, which was filed on July 21, 2010, Plaintiff claimed that he was struck in the face and ear by Defendant Young that same day. Id. In grievance number 59328, which was filed on August 2, 2010, Plaintiff claimed that Counselor Foskey told him that he had been denied medical treatment because of his behavior. Id. In grievance number 60204, which was filed on August 12, 2010, Plaintiff claimed that he was being denied access to the courts when he was prevented from sending legal documents outside of Georgia Diagnostic and Classification Prison through visitation pickup. Id. As such, the record demonstrates that none of the grievances filed by Plaintiff within 10 days of the July 21, 2010 incident of excessive force between Plaintiff and Defendant Young or within 10 days of the July 28, 2010 conversation between Plaintiff and Defendant Powell provides any relevant information whatsoever about how Defendant Powell allegedly instituted a custom of excessive force.

Although Plaintiff correctly notes that he exhausted his administrative remedies concerning both grievance number 58935 and grievance number 59328, Defendant Powell nevertheless is entitled to have Plaintiff's supervisory liability claim against him dismissed for failure to exhaust administrative remedies because Plaintiff never filed any grievance, let alone fully exhausted all available administrative remedies, concerning Defendant Powell's alleged

institution of a custom of excessive force. While an inmate need not identify any particular defendant in his grievance to exhaust his claim, an inmate must provide "as much relevant information as he reasonably can in the administrative grievance process." Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000). Having an inmate provide as much relevant information as possible is consistent with the PLRA's broader mandate that all inmates must "complete the administrative review process in compliance with the prison's grievance procedures, so that there is 'time and opportunity to address complaints internally before allowing the initiation of a federal case.'" Parzyck v. Prison Health Services, Inc., 627 F.3d 1215, 1218-1219 (11th Cir. 2010), quoting Woodford v. Ngo, 548 U.S. 81, 93 (2010).

The undisputed evidence here establishes that not only did Plaintiff fail to provide as much relevant information about his supervisory liability claim against Defendant Powell as he reasonably could have in the three grievances he filed between July 21, 2010 and August 12, 2010, but also that Plaintiff did not pursue any grievance about Defendant Powell allegedly having instituted a custom of excessive force in violation of Plaintiff's constitutional rights even after the July 28, 2010 conversation between Plaintiff and Defendant Powell. Plaintiff therefore deprived prison officials of having the opportunity to address his claims internally before he initiated this lawsuit. Consequently, Plaintiff's supervisory liability claim against Defendant Powell should be dismissed for failure to exhaust administrative remedies.

B. Failure to State a Plausible Claim

Supervisory officials cannot be held liable under 42 U.S.C. § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability. Goebert v. Lee County, 510 F.3d 1312, 1331 (11th Cir. 2007); Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999). A supervisory official is liable only "'when the supervisor

personally participates in the alleged constitutional violation or when there is causal connection between the actions of the supervising official and the alleged constitutional deprivation.'" Mathews v. Crosby, 480 F.3d 1265, 1270 (11th Cir. 2007), quoting Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003). Simply put, "[t]he standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." Cottone, 326 F.3d at 1360 (internal quotation marks and citation omitted).

To establish a causal connection, the plaintiff must show that the supervisor instituted a custom or policy that resulted in deliberate indifference to the plaintiff's constitutional rights or that the facts support an inference that the supervisor directed his subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them. West v. Tillman, 496 F.3d 1321, 1328 (11th Cir. 2007). Alternatively, to establish a causal connection, the plaintiff must show that a history of widespread abuse put the supervisor on notice of the need to correct the alleged constitutional deprivation, and the supervisor fails to do so. West, 496 F.3d at 1328-1329. When considering whether a causal connection exists between the supervisor's action and the alleged constitutional deprivation, mere knowledge of a potential constitutional deprivation is not sufficient to impose liability. Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009). Instead, the plaintiff must allege some purposeful action by the supervisor to deprive the plaintiff of a constitutional right in order to state a claim against the supervisor. Id.

Additionally, to survive a motion to dismiss, the complaint must allege sufficiently specific facts that, accepted as true, "state a claim of relief that is plausible on its face." Ashcroft, 556 U.S. at 678, quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the plaintiff alleges facts that could reasonably allow the court to infer that the defendant is liable for the alleged misconduct. Id. Where the alleged facts do not allow

the court to infer more than a mere possibility of misconduct, the complaint has not demonstrated that the plaintiff is entitled to relief. Id. Therefore, when examining the facts alleged in a complaint, the court must assume the facts to be true and "then determine whether they plausibly give rise to an entitlement to relief." Id. A plaintiff, however, does not state a claim by merely making "naked assertions devoid of factual enhancement." Id.

Because Plaintiff does not suggest that Defendant Powell personally participated in the July 21, 2010 incident, the relevant inquiry is whether Plaintiff alleges a sufficient causal connection between Defendant Powell's actions and the alleged constitutional deprivation suffered by Plaintiff. To determine whether Plaintiff alleges a sufficient causal connection, it is necessary to review Plaintiff's allegations against Defendant Powell. In the initial complaint, Plaintiff alleges that "[o]n July 28, 2010, while in Cell E 204, Deputy Warden Powell informed me that he reviewed the camera recording of the incident which occurred on July 21, 2010 involving myself and Officer Emmanuel Young. Powell stated that 'Officer Young only placed his hand on your face to turn it to the side.' He also stated, 'Officers are allowed to get in your face because you're an inmate and you're to be treated like that.'" Doc. 1 at 4. In the supplement to his initial complaint, Plaintiff further alleges that

> [o]n July 27, 2010, I informed Deputy Warden Powell that I had not been treated by medical for the injuries I was suffering from the assault by [Officer] Young on July 21, 2010. [Deputy Warden Powell] stated, 'she told me that she examined you.' He would not tell me who he referred to as 'she.' [Deputy Warden Powell] also mentioned that there are documents stating that I had been seen and treated by medical.

Doc. 9 at 10. Finally, in his objection to the Court's prior Order and Recommendation, Plaintiff alleges that "[o]n July 28, 2010, Deputy Warden Powell stated that 'Officer[s] [are] allowed to get in your face because you're an inmate and you're to be treated like that,' after he reviewed

9

the recording of the assault by Defendant Young. Such [a] statement establish[es] that there is a custom of holding violence-prone." Doc. 13 at 1.

Even after "liberally construing" all of Plaintiff's allegations because he is proceeding *pro se*, Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998), Plaintiff fails to allege a sufficient causal connection between Defendant Powell's actions and the alleged constitutional deprivation based on Defendant Powell either instituting a custom of excessive force or knowing that his subordinates would act unlawfully and failing to stop them. Plaintiff alleges that Defendant Powell's statement to Plaintiff on July 28, 2010 establishes that Defendant Powell instituted a custom of excessive force in violation of Plaintiff's constitutional rights. This single statement does not indicate a custom or policy of excessive force, but rather denies that any force was used in the incident in question. The alleged statement that an officer may "get in an inmate's face" or touch an inmate's face to turn the inmate's face to the side does not suggest a policy allowing guards to punch inmates or otherwise use excessive force. Plaintiff's allegations appear to be a formulaic recitation of one of the prerequisites for imposing supervisory liability, namely that Defendant Powell instituted a "custom or policy [that] result[ed] in deliberate indifference to constitutional rights." West, 496 F.3d at 1328 (internal quotations and citation omitted).

Where, as here, Plaintiff's conclusory allegations amount to nothing more than a "formulaic recitation" of the elements to impose supervisory liability, the allegations are not entitled to the presumption of truth when considering a motion to dismiss. Ashcroft, 556 U.S. at 681. Additionally, Plaintiff's vague allegations against Defendant Powell do not contain sufficiently specific facts to conclude that Defendant Powell instituted a "policy or custom" of excessive force. See Goebert, 510 F.3d at 1332 ("Demonstrating a policy or custom requires

show[ing] a persistent and wide-spread practice."). As such, Plaintiff does not state a plausible claim for relief concerning the first prerequisite for establishing a causal connection and imposing supervisory liability on Defendant Powell.

Plaintiff also fails to allege a sufficient causal connection between Defendant Powell's actions and the alleged constitutional deprivation based on a history of widespread abuse. Nowhere in Plaintiff's initial complaint or his subsequent supplements does Plaintiff make any specific factual allegations about a history of widespread abuse of inmates at Georgia Diagnostic and Classification Prison sufficient to put Defendant Powell on notice about the need to correct alleged constitutional deprivations. See West, 496 F.3d at 1328; see also Hartley, 193 F.3d at 1269 ("The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences."). Plaintiff alludes to Defendant Powell having such knowledge based on his alleged statement to Plaintiff on July 28, 2010, but Plaintiff fails make any specific factual allegations about widespread abuse so "obvious, flagrant, rampant and of continued duration" to put Defendant Powell on notice. Hartley, 193 F.3d at 1269. As such, Plaintiff does not state a plausible claim for relief concerning the second prerequisite for establishing a causal connection and imposing supervisory liability on Defendant Powell.

CONCLUSION

For the above-stated reasons, it is hereby **RECOMMENDED** that the Motion to Dismiss (Doc. 22) be **GRANTED** and that Defendant Powell be dismissed as a party to the above-styled action. Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this recommendation with the district judge to whom the case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof.

**SO RECOMMENDED**, this 7th day of June, 2013.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge